**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anna Madrid,<br><br>        Plaintiff,<br><br>vs.<br><br>Maricopa County, et al.,<br><br>        Defendants. | No. CV-10-2031-PHX-GMS<br><br>**ORDER** |

Pending before the Court is an Amended Motion to Dismiss (Doc. 5) filed by Defendants Maricopa County, Maricopa County Correctional Health Services ("CHS"), Maricopa County Sheriff's Office ("MCSO"), and several individual health care professionals. For the following reasons, the Court grants in part and denies in part the Motion.

## BACKGROUND

Plaintiff's claims arise from her experience as a pre-trial detainee in the Maricopa County Jail system from May 12 to May 28, 2009. Before Plaintiff entered custody, she had sustained a "severe right wrist laceration which injured all vital structures within her forearm." (Doc. 1-1, ¶14). On April 24, 2009, Dr. Steven Bastian ("Bastian") performed surgery on Plaintiff's forearm. (*Id.* at ¶ 15). Thereafter, Bastian required Plaintiff "to wear an 'extension block splint'" to ensure she healed correctly. (*Id.*). On May 12, 2009, Plaintiff "was arrested

1    and taken to the 4th Avenue Jail Intake" and subsequently "transferred to Estrella Jail where

2    she was taken to the medical center." (*Id.* at ¶ 17). Plaintiff was seen by the individual

3    Medical Defendants – nurses M. Lugo, M. Kotapke, and Myriam Diaz, physician assistant

4    D. Bunkers, and Dr. M. Gaskins – on May 12 and May 14. (*Id.*).

5          Plaintiff filed a Complaint, raising a cause of action pursuant to 42 U.S.C. § 1983

6    based on a violation of her Fourteenth Amendment rights as a result of Defendants'

7    deliberate indifference to her medical needs. Within this claim, Plaintiff alleges that

8    Defendant Maricopa County failed to properly train and/or supervise the individual Medical

9    Defendants. Plaintiff also alleges a number of state law claims, including negligence, gross

10   negligence, medical malpractice, and failure to provide medical care under state law.

11         After removing to this Court, Defendants moved to dismiss Plaintiff's claims on the

12   following grounds: CHS and MCSO are non-jural entities incapable of being sued; Maricopa

13   County and CHS cannot be sued for medical negligence; Maricopa County is not liable for

14   punitive damages; Plaintiff has failed to state a § 1983 claim for denial of constitutionally

15   adequate medical care; Plaintiff's claims allege medical negligence, which falls short of the

16   constitutional requirement of deliberate indifference; the Sheriff, rather than Maricopa

17   County, is responsible for the conditions of confinement within the Maricopa County Jails;

18   Plaintiff has failed to state a § 1983 claim for failure to train personnel; and Maricopa County

19   cannot be held vicariously liable for the conduct of others.

20                                    **DISCUSSION**

21   **I. Legal Standard**

22         To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil

23   Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a

24   "formulaic recitation of the elements of a cause of action"; it must contain factual allegations

25   sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*,

26   550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations

27   . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'"

28   *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*,

550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal citations and quotation marks omitted).

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## II. Defendants' Motion to Dismiss

### A. Liability of CHS and MCSO

Defendants argue that CHS and MCSO are non-jural entities that cannot be sued. Plaintiff concedes that this is the case. (Doc. 10). Because Plaintiff agrees that CHS and MCSO are non-jural entities, and this Court's prior rulings support this assertion, *Payne v. Arpaio*, 2009 WL 3756679, at *4–5 (D. Ariz. Nov. 24, 2009); *see also Braillard v. Maricopa Cnty.*, 224 Ariz. 481, 487, 232 P.3d 1263, 1269 (App. 2010), the Court will dismiss these Defendants.

### B. Count 1: 42 U.S.C. § 1983

Plaintiff alleges that Defendants "engaged in conduct that was the proximate cause of a violation of Plaintiff's rights under [the] Fourteenth Amendment . . . to the Constitution of the United States of America, including but not limited to his [sic] right to be provided adequate medical treatment and adequate conditions of confinement," which violates "Plaintiff's civil rights under 42 U.S.C. § 1983." (Doc. 1-1, ¶ 30).[1]

---

[1] Because Plaintiff concedes that this is not a conditions of confinement case, (Doc. 10 at 15), the Court disregards Defendants' arguments to the contrary.

Defendants argue that Plaintiff's claims amount to nothing more than claims of medical negligence, which do not constitute constitutional violations. (Doc. 5).[2] According to Plaintiff, though, the actions of the individual Medical Defendants fell so far below the applicable standard of care that she was denied the treatment necessary for proper recovery. *See* Doc. 1-1, ¶ 40. Specifically, Plaintiff alleges that "[w]hile the Medical Staff cared for the wound generated by surgery, they did nothing to assure her hand healed correctly and that she did not lose motion in her hand and fingers." (*Id.* at ¶ 27).

Under 42 U.S.C. § 1983, to maintain a Fourteenth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).[3] A violation of the right to adequate medical care requires alleging "that the officials acted with deliberate indifference in failing to respond to a serious medical need." *Frost v. Agnos*, 152 F.3d 1124, 1130 (9th Cir. 1998). In other words, a plaintiff must show (1) a serious medical need and (2) that the defendant's response was deliberately indifferent. *Jett*, 439 F.3d at 1096. The Court concludes that Plaintiff has stated a claim for denial of medical care and deliberate indifference in violation of the Due Process Clause of the Fourteenth Amendment. Accordingly, Plaintiff has stated a claim under § 1983.

**(i) Serious Medical Need**

To demonstrate a serious medical need, the plaintiff must show that "the failure to treat [the plaintiff's] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991),

---

[2] In their Reply, Defendants further contend that "Plaintiff has not made any factual allegations whatsoever against M. Lugo, LPN, M. Kotapke, RN or D. Bunkers, PA-C," so "these defendants must, therefore, be dismissed." (Doc. 13). The Court need not address this issue because Defendants raise it for the first time in their Reply. *See Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.").

[3] "Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than under the Eighth Amendment." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

1   *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en

2   banc) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (internal quotation marks

3   omitted). Examples of serious medical needs include the existence of an injury that a

4   reasonable doctor or patient would find important and worthy of comment or treatment, the

5   presence of a medical condition that significantly affects an individual's daily activities, or

6   the existence of chronic and substantial pain. *Id.* at 1059–60.

7        Prior to entering into custody, Plaintiff had sustained "a severe right wrist laceration

8   which injured all vital structures in her forearm." (Doc 1-1 at ¶ 14). After surgery, Plaintiff

9   wore an "'extension block splint' to assure that her fingers and wrist did not contract and

10  would heal correctly." (*Id.* at ¶ 15). The Court recognizes that such a severe wrist injury is

11  something a reasonable doctor would find worthy of comment, and which could result in

12  further significant injury to Plaintiff. In fact, after being released from custody and seeing her

13  surgeon on June 11, 2009, the surgeon found that Plaintiff's fingers were "positioned in a

14  'flexed posture,' unable to be extended at the MP joints" and that Plaintiff displayed "little

15  of [sic] any active flexion of her digits or her thumb." (*Id.* at ¶¶ 24–25). Accordingly,

16  Plaintiff has pled sufficient facts to demonstrate a serious medical need.

17        **(ii) Deliberate Indifference**

18        A plaintiff can satisfy the deliberate indifference requirement by showing (a) a

19  purposeful act or failure to respond and (b) harm caused by this indifference. *Jett*, 439 F.3d

20  at 1096. In other words, deliberate indifference "may appear when prison officials deny,

21  delay, or intentionally interfere with medical treatment, or it may be shown by the way in

22  which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390,

23  394 (9th Cir. 1988) (citing *Estelle*, 429 U.S. at 104–05). The indifference to medical needs,

24  however, "must be substantial; a constitutional violation is not established by negligence or

25  'an inadvertent failure to provide adequate medical care.'" *Anderson v. Cnty. of Kern*, 45

26  F.3d 1310, 1316 (quoting *Estelle*, 429 U.S. at 105–06). In describing the state of mind

27  necessary for "deliberate indifference," the Supreme Court has held that a prison official

28  must disregard "a risk of harm of which he is aware." *Farmer v. Brennan*, 511 U.S. 825, 837

1   (1994).

2       Plaintiff's Amended Complaint alleges that Defendants "failed to provide Plaintiff

3   with appropriate medical care and treatment." (Doc. 1-1, ¶ 39). Even though the medical staff

4   at the jail possessed Plaintiff's "records regarding her surgery and treatment," (*Id.* at ¶ 18),

5   which conveyed Dr. Bastian's orders for Plaintiff to wear an "extension block splint" and to

6   have physical therapy, (*Id.* at ¶¶ 15–16), Dr. Gaskins "ordered wound care for the staples"

7   but "did not order physical therapy." (*Id.* at ¶ 19). Additionally, "on May 25, 2009, the splint

8   was removed and thrown away by Nurse Myriam Diaz and replaced with elastic netting." (*Id.*

9   at ¶ 21). This then deprived Plaintiff of "the splint medically prescribed to keep flexion and

10  stop contraction in her hand and fingers." (*Id.* at ¶ 22).

11      Based on the foregoing facts, Plaintiff has adequately stated a claim for deliberate

12  indifference to a serious medical need pursuant to § 1983. The Amended Complaint

13  demonstrates that the named healthcare professionals, even though they possessed Plaintiff's

14  records from her surgery, did not provide the medical care that the records would have

15  indicated was necessary.

16  **C. Maricopa County's Liability with Respect to Plaintiff's § 1983 Claim**

17      Defendants assert that, in Arizona, the responsibility for operating jails and caring for

18  prisoners is placed by law upon the sheriff, *see* A.R.S. §§ 11-441(A)(5), 31-101, who is a

19  county officer, Ariz. Const. art. 12, §§ 3, 4. (Doc. 5). They assert that Maricopa County is

20  not responsible for the operation of the jails. *See* A.R.S. § 11-251. Defendants argue that all

21  of Plaintiff's allegations against the County regarding the operation of the jail, the jail's

22  policies and procedures, and employees of the jail, fail to state a claim against Maricopa

23  County and must be dismissed. (Doc. 5). However, Plaintiff asserts (Doc. 10) and Defendants

24  concede (Doc. 13) that Maricopa County is responsible for medical care in the jails.

25      Maricopa County, though, asserts that it cannot be held vicariously liable because

26  *Monell v. Department of Social Services of the City of New York* stated that "a municipality

27  cannot be held liable under § 1983 on a *respondeat superior* theory" and thus municipalities

28  can only be held liable if the "action[,] pursuant to [an] official municipal policy of some

nature[,] caused a constitutional tort." (Doc. 5) (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). The County contends that there are "no constitutionally insufficient policies or procedures" involved to state a *Monell* claim. (Doc. 13).

"[A] municipality can be found liable under [section] 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under [section] 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694–95) (emphasis omitted)). However, municipalities can also be held liable for deprivations of constitutional rights resulting from their policies or customs, *Monell*, 463 U.S. at 690–91, and by showing that the alleged constitutional violation was caused by a failure to adequately train municipal employees. *Canton*, 489 U.S. at 388–91. To successfully assert a municipality's liability under this theory, "a plaintiff must show that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation." *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1186 (9th Cir. 2002) (citing *Canton*, 489 U.S. at 387). The Ninth Circuit has held that plaintiffs need not specifically allege a custom or policy; it is enough if the custom or policy can be inferred from the allegations of the complaint. *Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 610 (9th Cir. 1986).

Plaintiff's Complaint asserts that "Defendants have a history of and/or maintain a custom, policy, practice and/or procedure of deliberate indifference to medical care and treatment of inmates who arrive at the jail with a preexisting medical condition." (Doc. 1-1, ¶ 32). Furthermore, Plaintiff posits that Maricopa County failed to adequately train its employees, which led to the constitutional violation. (*Id.* at ¶ 33). The Amended Complaint alleges that "Defendant Maricopa County . . . failed to have on staff competent and fully trained medical personal [sic] who were trained to evaluate the arm injury and trained to provide immediate and/or emergency medical care and treatment to Plaintiff's wrist." (Doc. 1-1). As training regarding the health needs of prisoners is inherent in creating a well-functioning correctional facility, the Amended Complaint fairly alleges that the County was

1   deliberately indifferent to Plaintiff's medical needs. *See, e.g.*, *Lee v. Arizona*, 2010 WL

2   3941857, at *5 (D. Ariz. Oct. 6, 2010). Therefore, the Court finds that Plaintiff has

3   adequately stated a *Monell* claim against Maricopa County for liability pursuant to § 1983.

4   **D. Count 2: State Tort Claims**

5   In her Complaint, Plaintiff alleges that Defendant Maricopa County "(1) failed to

6   provide Plaintiff with appropriate medical care and treatment; (2) failed to have in place

7   policies, procedures and/or staff whereby Plaintiff, as an inmate, could receive prompt,

8   accurate and professional evaluation of medical condition [sic] and quick, prompt and

9   professional medical care and treatment; and/or (3) failed to have on staff competent and

10  fully trained medical personal [sic] who were trained to evaluate the arm injury and trained

11  to provide immediate and/or emergency medical care and treatment to Plaintiff's wrist."

12  (Doc. 1-1, ¶ 39). Additionally, Plaintiff asserts that "Defendants owed Plaintiff a duty to

13  provide her with competent medical care and treatment," but "[t]he actions of the Medical

14  Defendants fell below and violate[d] completely the standard of care." (*Id.* at ¶ 40).

15  Moreover, Plaintiff asserts that under the theory of respondeat superior, Defendant Maricopa

16  County is liable for the "negligent/grossly negligent acts of its employees that occurred in

17  the course and scope of employment". (*Id.* at ¶ 7).

18  **(i) Medical Malpractice**

19  Arizona defines medical malpractice as "an action for injury or death against a

20  licensed health care provider." A.R.S. § 12-561(2). A "[l]icensed health care provider" is

21  defined as "[a] person, corporation, or institution licensed or certified by the state to provide

22  health care, medical services, nursing services, or other health-related services." *Id*. at. §

23  12-561(1). An Arizona court interpreted the statute by stating: "[w]hile A.R.S. § 12-561 does

24  not explain licensed, it is in accord with the overall statutory scheme that the license referred

25  to is a license from DHS [the State Department of Health Services]—the department created

26  for the sole purpose of controlling licensing standards for health care institutions." *Sahf v.*

27  *Lake Havasu City Ass'n for the Retarded and Handicapped*, 150 Ariz. 50, 58, 721 P.2d 1177,

28  1195 (App. 1986) (internal quotation marks omitted).

Maricopa County is not a licensed healthcare provider. A.R.S. § 36-402(A)(11) requires Maricopa County's medical facilities at the jail be accredited by either the national corrections commission on health care or an American correctional association. Thus, Maricopa County's jail medical facilities are not licensed or certified by the State. Additionally, A.R.S. 36-402(A)(11) provides that "[t]his chapter [Public Health and Safety] . . . do[es] not authorize the licensure, supervision, regulation or control of . . . [a] facility that provides medical and health services to inmates who are confined in a county jail." Accordingly, because the County is not licensed by DHS, it is not a licensed health care provider and may not be sued under a medical malpractice cause of action.

Although Maricopa County cannot be sued directly for medical malpractice, the County can be held vicariously liable for the alleged malpractice of its employees, the individual Medical Defendants.

**(ii) Negligence**

The Court concludes that Plaintiff states a claim based on negligence principles against the individual Medical Defendants. The Court also concludes that Maricopa County can be held vicariously liable for the negligence claims. Plaintiff cites to *Ryan v. State*, 134 Ariz. 308, 656 P.2d 597 (1982) and *Hutcherson v. City of Phoenix*, 188 Ariz. 183, 933 P.2d 1251 (App. 1997), *overruled on other grounds by Hutcherson v. City of Phoenix*, 192 Ariz. 51, 971 P.2d 449 (1998), to support her contention that Maricopa County can be held vicariously liable for the negligence of its employees who are medical professionals. Although Defendants attempt to distinguish *Ryan* in their Reply, the Court finds the two cases persuasive.

In *Hutcherson*, the city was held vicariously liable for the negligence of its employee, a 911 operator. 188 Ariz. at 187, 933 P.2d at 1255. The Court relied upon *Ryan* in holding that the city should be held liable based on a theory of respondeat superior. For example, the Court stated that "*Ryan* found that the legislature has 'recognized that the state is liable for the negligent acts of its agents.'" *Id*. at 189, 933 P.2d at 1257 (quoting *Ryan*, 134 Ariz. at 310, 656 P.2d at 599). Furthermore, the Court stated: "*Ryan* declared that, generally, the state

1   and its agents will be subject to the same tort law as private citizens," which is usually a

2   negligence standard of care. *Id.* (quoting *Ryan*, 134 Ariz. at 311, 656 P.2d at 600) (internal

3   quotation marks omitted).

4           To bolster the conclusion that courts may find government entities liable for the

5   negligent actions of their employees, the Court points to *Simmons v. U.S.*, 805 F.2d 1363 (9th

6   Cir. 1986). There, the Ninth Circuit found the United States liable, based on the theory of

7   respondeat superior, for a counselor's negligence "in his capacity as a social worker

8   employed by a United States agency." *Id.* at 1364, 1371. The United States was liable

9   because it employed the counselor and because the counselor was acting within the scope of

10  his employment. *Id.* at 1371. Thus, the Court finds that Maricopa County can similarly be

11  held vicariously liable for the negligent actions of its employees.

12          **E. Punitive Damages**

13          Defendants argue that a claim for punitive damages against Maricopa County must

14  be dismissed because § 1983 does not authorize damages against local governmental entities.

15  (Doc. 5). Punitive damages are not recoverable against a municipality or a state official sued

16  in his or her official capacity, but are recoverable against state officials sued in their

17  individual capacities. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

18  The same holds true under state law for public employees acting within the scope of their

19  employment. *See* A.R.S. § 12-820.04. Accordingly, the Court grants Defendants' Motion

20  with respect to Plaintiff's punitive damages claim against Maricopa County and the

21  individual Medical Defendants in their official, but not individual, capacities.

22                                        **CONCLUSION**

23          The Court dismisses MCSO and CHS as defendants because they are non-jural

24  entities. The Court denies Defendants' Motion with respect to Plaintiff's § 1983 claims

25  against the Medical Defendants and Maricopa County. Additionally, Plaintiff states a claim

26  for medical malpractice and negligence with respect to the individual Medical Defendants.

27  However, because Maricopa County is not a licensed health care provider, it cannot be sued

28  for medical malpractice. Maricopa County can, however, be held vicariously liable for the

negligent actions and medical malpractice of its employees. Finally, Plaintiff's claim for punitive damages is dismissed against the County and the individual Medical Defendants in their official capacities.

**IT IS THEREFORE ORDERED** that  Defendants' Amended Motion to Dismiss (Doc. 5) is **GRANTED** in part and **DENIED** in part.

DATED this 26th day of April, 2011.

_____
G. Murray Snow
United States District Judge